IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| AVERY HUTCHESON and | ) | |
| DANYELLE HUTCHESON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 6:14-cv-03499-MDH |
| | ) | |
| JPMORGAN CHASE BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant's Motion to Dismiss or in the Alternative to Strike Certain Counts of Plaintiff's First Amended Complaint (Doc. 37). After full and careful consideration, the Court hereby **GRANTS IN PART AND DENIES IN PART** Defendant's motion.

## I. BACKGROUND

Plaintiffs filed a petition against Defendant JPMorgan Chase Bank in state court asserting disability discrimination (Count I), disability accommodation (Count II), negligence (Count III), breach of contract (Count IV), and unjust enrichment (Count V) arising from Defendant's actions in servicing Plaintiffs' mortgage loan.[1] Defendant removed the case to federal court and filed a motion to dismiss Counts I-IV for failure to state a claim. After full briefing, but before the motion was ruled on by the Court, Plaintiffs requested leave to amend their petition stating

---

[1] The facts alleged in Plaintiffs' petition are more fully discussed in the Court's March 26, 2015 Order. To summarize, Plaintiffs allege that Plaintiff Avery Hutcheson suffers from Inclusion Body Myositisa ("IBM") and is confined to a wheelchair, that Plaintiffs financed the purchase of their home through Defendant, that at some point Defendant increased Plaintiffs' monthly mortgage payment from $1,238.61 to $1,684.09 due to a purported increase in the cost of homeowner's insurance and property taxes, that Plaintiffs contacted the insurance company and county assessor and discovered that neither insurance costs nor property taxes had increased, that Plaintiffs informed Defendant tax and insurance rates had not increased and tendered payment for the actual amount due, that Defendant refused to accept the payment and returned Plaintiffs' July 2010 check, and that Defendant told Plaintiffs their loan was in default and Plaintiffs were required to pay $6,000 plus an additional $1,238.61 before Defendant would accept the July 2010 payment. Defendant allegedly refused, and continues to refuse, to accept tender of Plaintiffs' July 2010 payment, to reinstate Plaintiffs' regular monthly payment, or to allow Plaintiffs a home loan modification.

"Plaintiffs do not aver any new counts in the first amended complaint; rather, plaintiffs desire to restate, clarify, and make more certain, claims amenable to federal jurisdiction in this court, inchoate in state court." Defendant did not oppose Plaintiffs' request for leave to amend but stated it "reserves the right to re-assert Chase's Fed. R. Civ. P. 12(b)(6) motion as to certain of the claims, a motion that is currently fully briefed and pending before the Court."

The Court reviewed the allegations made in Plaintiffs' petition and proposed amended complaint along with the legal suggestions submitted by the parties and issued an order granting Defendant's motion to dismiss Counts I-III and denying Defendant's motion to dismiss Count IV. The Court granted Plaintiffs' motion for leave to amend insofar as it sought leave to amend but denied the motion insofar as it sought leave to file the proposed amended complaint, which the Court found futile as to Counts I-III. Based on the pleadings and arguments provided by the parties, the Court granted Plaintiffs leave to file an amended discrimination and/or accommodation claim (Counts I, II) but denied leave to file an amended negligence claim (Count III).

Plaintiffs subsequently filed their Amended Complaint, which, again, asserts disability discrimination (Count I), disability accommodation (Count II), negligence (Count III), breach of contract (Count IV), and unjust enrichment (Count V). Defendant filed a second motion to dismiss arguing Plaintiffs' amended disability claims fail to state a claim and that Plaintiffs' negligence claim should be dismissed/stricken because the Court's prior order expressly stated "Plaintiffs are not permitted to file an amended negligence claim." Plaintiffs respond that their disability claims are cognizable under Title III of the ADA and that "[w]hile the court did not grant direct leave to amend the claim of negligence on the facts plead in the initial petition, plaintiffs here seek reconsideration of leave to amend[.]"

## II.  STANDARD

"To survive a motion to dismiss [under 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is facially plausible where its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The plaintiff must plead facts that show more than a mere speculation or possibility that the defendant acted unlawfully. *Id.*; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Courts assess plausibility based on the allegations as a whole rather than on each allegation in isolation. *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n. 4 (8th Cir. 2010).  In assessing a 12(b)(6) motion, the court may consider the complaint's allegations as well as "material attached to the complaint and materials that are public records, do not contradict the complaint, or are necessarily embraced by the pleadings."  *Jones v. Wells Fargo Home Mortgage*, No. 4:13CV1762 CDP, 2014 WL 307055, at *2 (E.D. Mo. Jan. 28, 2014) (citing *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).

## III.  ANALYSIS

Upon careful consideration, the Court finds Counts I and II of Plaintiffs' First Amended Complaint are sufficient to survive a motion to dismiss but only insofar as they seek injunctive relief.  Plaintiffs' amended negligence claim was filed without leave of court or consent of opposing counsel and is therefore dismissed.

### A.  Disability Discrimination and Accommodation (Counts I & II)

Plaintiffs' amended Counts I and II allege Defendant discriminated against and denied reasonable and public accommodation to Plaintiffs by reason of Mr. Hutcheson's disability in

3

violation of Title III of the ADA.[2] Count I alleges Defendant discriminated against Plaintiffs on the basis of Avery Hutcheson's disability by raising Plaintiffs' monthly mortgage payment without notice, explanation, or justification, and by refusing to accept tender of Plaintiffs' July 2010 check and/or allow Plaintiffs to reinstate their original payment schedule. Count II alleges Plaintiffs requested a home loan modification as an accommodation for Avery Hutcheson's disability, that Plaintiffs qualified for the requested modification, and that Defendant denied Plaintiffs' request for a home loan modification on the basis of Avery Hutcheson's disability. Both counts request compensatory damages, punitive damages, attorney fees and costs, and "further relief the court deems just."

Title III of the ADA states that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation[.]" 42 U.S.C. § 12182(a). A bank is a private entity that classifies as a "public accommodation" for the purposes of this subchapter. *See id.* at § 12181(7)(F). Under Title III, a person who owns, leases, or operates a place of public accommodation is prohibited from engaging in the following acts on the basis of a customer's disabilities: (1) denying the disabled person the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity on the basis of his/her disability; (2) affording the disabled person an unequal opportunity to participate in or benefit from the goods, services, facilities, privileges,

---

[2] The Court previously dismissed Plaintiffs' discrimination and accommodation claims because "[t]hese counts, as currently pleaded, fail to state a claim." The Court found Plaintiffs' disability claims were subject to dismissal under the MHRA because they were untimely. The Court also found they were not cognizable under the ADA because "Plaintiffs did not cite, and the Court is unable to locate, a provision of the ADA that prohibits disability discrimination in the context of real estate loan transactions"; the Court noted that Plaintiff cited only Title I and II of the ADA, neither of which is applicable to the alleged facts. The Court further noted that "Title III of the ADA does not provide relief in this instance because Plaintiffs do not allege discrimination in a place of public accommodation." Nonetheless, the Court granted Plaintiffs leave to file an amended discrimination and/or accommodation claim in order to "specify the statutory authority under which such claims are brought and include sufficient factual matter to state a plausible claim."

4

advantages, or accommodations of an entity on the basis of his/her disability; and/or (3) providing the disabled person with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals on the basis of his/her disability, "unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others." *See id*. at § 12182(b)(1)(A).

Upon review and consideration, the Court finds Plaintiffs' allegations in Counts I and II of the Amended Complaint are sufficient to state claims under Title III of the ADA insofar as they seek injunctive relief. Plaintiff's Amended Complaint pleads all the required elements of a Title III claim under the ADA[3] and, accepting Plaintiffs' factual allegations as true, Plaintiffs state a plausible claim at the current stage of litigation. Defendant does not argue that Plaintiffs fail to plead any specific element(s) of their claims but, rather, that Plaintiffs' claims are not the type of claims covered by Title III of the ADA. Defendant cites the Court's prior order and argues "[t]here are no Missouri or Eighth Circuit cases applying Title III of the ADA, alleged discrimination in a place of public accommodation, to the servicing of a mortgage loan, including the forbearance or extension of a modification on an existing loan."

The Court agrees that Plaintiffs' claims under Title III are questionable but, given the broad remedial purpose behind the ADA and the liberal pleading requirements under the Federal Rules of Civil Procedure, the Court cannot say dismissal of Plaintiffs' Title III claims is appropriate at this time. *See Horras v. Am. Capital Strategies, Ltd.*, 729 F.3d 798, 807 (8th Cir.

---

[3] "A person alleging discrimination under Title III must show (1) that he is disabled within the meaning of the ADA, (2) that the defendant is a private entity that owns, leases, or operates a place of public accommodation, (3) that the defendant took adverse action against the plaintiff that was based upon the plaintiff's disability, and (4) that the defendant failed to make reasonable modifications that would accommodate the plaintiff's disability without fundamentally altering the nature of the public accommodation." *Amir v. St. Louis Univ*., 184 F.3d 1017, 1027 (8th Cir. 1999).

2013) (citing *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)) ("the simplified notice pleading standard of Rule 8(a) likewise applies to all civil actions . . . and 'relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims"). That Plaintiffs cite no binding, analogous case law applying Title III to the servicing of a mortgage loan, alone, does not render Plaintiffs' claims improper.

As an initial matter, the Court notes there is currently a circuit split regarding whether Title III extends to cover goods and services that are unrelated to the physical structure of a place of public accommodation,[4] for example, the servicing of a mortgage loan by a bank. Because the

---

[4] *Compare Carparts Distribution Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc.*, 37 F.3d 12, 19-20 (1st Cir. 1994) ("Neither Title III nor its implementing regulations make any mention of physical boundaries or physical entry. Many goods and services are sold over the telephone or by mail with customers never physically entering the premises of a commercial entity to purchase the goods or services. To exclude this broad category of businesses from the reach of Title III and limit the application of Title III to physical structures which persons must enter to obtain goods and services would run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges and advantages, available indiscriminately to other members of the general public."); *Pallozzi v. Allstate Life Ins. Co.*, 198 F.3d 28, 32-33 (2d Cir. 1999) opinion amended on denial of reh'g, 204 F.3d 392 (2d Cir. 2000) ("Title III's mandate that the disabled be accorded 'full and equal enjoyment of the goods, [and] services ... of any place of public accommodation,' id., suggests to us that the statute was meant to guarantee them more than mere physical access."); *Morgan v. Joint Admin. Bd., Ret. Plan of Pillsbury Co. & Am. Fed'n of Grain Millers*, AFL-CIO-CLC, 268 F.3d 456, 459 (7th Cir. 2001) ("The defendant asks us to interpret 'public accommodation' literally, as denoting a physical site, such as a store or a hotel, but we have already rejected that interpretation. An insurance company can no more refuse to sell a policy to a disabled person over the Internet than a furniture store can refuse to sell furniture to a disabled person who enters the store. . . . The site of the sale is irrelevant to Congress's goal of granting the disabled equal access to sellers of goods and services. What matters is that the good or service be offered to the public."); *Rendon v. Valleycrest Prods., Ltd.*, 294 F.3d 1279, 1283-84 (11th Cir. 2002) ("A reading of the plain and unambiguous statutory language at issue reveals that the definition of discrimination provided in Title III covers both tangible barriers, that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and intangible barriers, such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges, see 42 U.S.C. § 12182(b)(2)(A)(i)-(ii). There is nothing in the text of the statute to suggest that discrimination via an imposition of screening or eligibility requirements must occur on site to offend the ADA."); *with Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1014 (6th Cir. 1997) ("The clear connotation of the words in § 12181(7) is that a public accommodation is a physical place. Every term listed in § 12181(7) and subsection (F) is a physical place open to public access. . . . To interpret these terms as permitting a place of accommodation to constitute something other than a physical place is to ignore the text of the statute and the principle of noscitur a sociis."); *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 613-14 (3d Cir. 1998) (citing Title II of the Civil Rights Act of 1964, Department of Justice regulations, and *Parker*, and concluding "we do not find the term 'public accommodation' or the terms in 42 U.S.C. § 12181(7) to refer to non-physical access or even to be ambiguous as to their meaning"); *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000) ("Title III provides an extensive list of 'public

6

Eighth Circuit has not directly addressed this issue, and because this Court finds the reasoning of the First, Second, Seventh, and Eleventh Circuits more consistent with the statute and its purposes, the Court will not dismiss Plaintiffs' disability claims solely because they concern the provision of services unrelated to physical barriers/location. Furthermore, while the majority of appellate courts hold Title III requires modifications for disability based on *access* to goods/services but not *content* of those goods/services,[5] as discussed by Defendant, such a rule does not prohibit Plaintiffs' claims here, where Plaintiffs allege Defendant denied Plaintiffs the right to participate in the "full and equal enjoyment" of Defendants' services as they universally existed.[6] Finally, Defendant's argument that Title III does not apply to Defendant's servicing of

---

accommodations' in § 12181(7), including such a wide variety of things . . . . All the items on this list, however, have something in common. They are actual, physical places where goods or services are open to the public, and places where the public gets those goods or services. The principle of noscitur a sociis requires that the term, 'place of public accommodation,' be interpreted within the context of the accompanying words, and this context suggests that some connection between the good or service complained of and an actual physical place is required.").

[5] *See, e.g., Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1012 (6th Cir. 1997) ("Furthermore, Title III does not govern the content of a long-term disability policy offered by an employer. The applicable regulations clearly set forth that Title III regulates the availability of the goods and services the place of public accommodation offers as opposed to the contents of goods and services offered by the public accommodation."); *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 613 (3d Cir. 1998) ("The purpose of the ADA's public accommodations requirements is to ensure accessibility to the goods offered by a public accommodation, not to alter the nature or mix of goods that the public accommodation has typically provided."); *Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 563 (7th Cir. 1999) ("We conclude that section 302(a) does not require a seller to alter his product to make it equally valuable to the disabled and to the nondisabled, even if the product is insurance. This conclusion is consistent with all the appellate cases to consider this or cognate issues."); *McNeil v. Time Ins. Co.*, 205 F.3d 179, 188 (5th Cir. 2000) ("In sum, we read Title III to prohibit an owner, etc., of a place of public accommodation from denying the disabled access to the good or service and from interfering with the disableds' full and equal enjoyment of the goods and services offered. But the owner, etc., need not modify or alter the goods and services that it offers in order to avoid violating Title III."); *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1115 (9th Cir. 2000) ("We find the Third Circuit's analogy persuasive and hold that Title III does not address the terms of the policies that UNUM sells."). *But see Pallozzi v. Allstate Life Ins. Co.*, 198 F.3d 28, 31–35 (2d Cir. 1999) (holding Title III of the ADA applies to insurance underwriting).

[6] In other words, Plaintiffs do not allege Defendant discriminated against Plaintiffs by failing to modify the terms of its universally applicable conditions regarding default and foreclosure. Rather, Plaintiffs argue they were denied the full benefits and accommodations available under the universal terms of the policy based on the disability of Avery Hutcheson. Specifically, Plaintiffs allege their monthly payments were increased *without justification under the policy*, that Defendant failed and refused to accept tender of Plaintiffs' check and reinstate Plaintiffs' original payment schedule *despite Plaintiffs' home loan not being in default under the policy*, and that Defendant denied Plaintiffs' requested home loan modification *despite Plaintiffs' qualification for the requested modification.* Such allegations appear not to seek modification of the content of Defendants' loan servicing terms but, rather, equal enjoyment of the benefits and accommodations provided under Defendants' loan servicing terms.

7

Plaintiffs' loan because Defendant did not originate the loan and because there is no allegation that the loan was originated in violation of the ADA is unpersuasive.[7]

Based on the foregoing, the Court cannot say Plaintiffs' disability allegations fail to state a claim under Title III. Although neither party raised the issue, the Court notes that Plaintiffs' Title III claims, however, seek relief only in the form of monetary damages, which are not recoverable in private actions brought under Title III of the ADA. *See* 42 U.S.C. § 12188(a) (incorporating remedies and procedures set forth in 42 U.S.C. § 2000a-3); 42 U.S.C. § 2000a-3(a) (allowing "a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order, may be instituted by the person aggrieved"); *see also Stebbins v. Legal Aid of Arkansas*, 512 F. App'x 662, 663 (8th Cir. 2013) (citing *Goodwin v. C.N.J., Inc.*, 436 F.3d 44, 50 (1st Cir. 2006)) ("Title III of the ADA does not provide for private actions seeking damages[.]"). While courts have dismissed similar claims for failure to state a claim,[8] the Court finds Plaintiffs' claims are amenable to injunctive relief,[9] and therefore, the Court will **DENY** Defendant's motion to dismiss Counts I and II.

---

[7] Title III prohibits discrimination on the basis of disability "by any person who owns, leases (or leases to), or operates a place of public accommodation" in its provision of services offered to "clients or customers of the covered public accommodation that enter[] into the contractual, licensing or other arrangement." Here, Defendant is a bank, which qualifies as a "public accommodation" under the statute. Plaintiffs allege Defendant discriminated against Plaintiffs in the servicing of Plaintiffs' mortgage loan, i.e. a service offered by Defendant bank. Plaintiffs allege they had a contractual arrangement with Defendant to service their loans. Thus, Defendant is subject to Title III of the ADA. Moreover, Title III prohibits "discrimination against [an individual] on the basis of disability in the fully and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation"; therefore, that Plaintiffs' mortgage loan was not allegedly originated in violation of the ADA does not mean Title III does not apply to Defendant's subsequent servicing of Plaintiffs' loan.

[8] *See, e.g., Ashby v. Bank of the W.*, No. 8:08CV401, 2008 WL 4754652, at *3 (D. Neb. Oct. 29, 2008) (dismissing); *Woods v. Wills*, 400 F. Supp. 2d 1145, 1163 (E.D. Mo. 2005) (same); *Riggs v. CUNA Mut. Ins. Soc'y*, 171 F. Supp. 2d 1210, 1215 (D. Kan. 2001) *aff'd sub nom. Riggs v. Cuna Mut. Ins. Soc.*, 42 F. App'x 334 (10th Cir. 2002) (same).

[9] For example, Plaintiffs allege Defendant "failed and refused, and continue to fail and refuse, to accept tender of the July 2010 check, and to reinstate plaintiffs' original payment schedule" and that Defendant "continued to deny the requested modification." Thus, Plaintiffs allege the purported harms are continuing such that "preventative relief" may be possible. *See Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 86 (2d Cir.) op. corrected, 511 F.3d 238 (2d Cir. 2004); *Daugherty v. Steak N Shake*, No. 4:14-CV-152-SPM, 2014 WL 3384751 (E.D. Mo. July 10, 2014).

### B. Negligence (Count III)

Count III of Plaintiffs' Amended Complaint reasserts negligence and cites a new theory under which Defendant allegedly owes a duty to Plaintiffs. Plaintiffs allege, for the first time, that "Defendant, by reason of the special trust and confidence reposed in it by plaintiffs as a result of the influence and inducements of defendant, created a confidential relationship with plaintiffs" and that "by reason of the confidential relationship it created with plaintiffs, [Defendant] acted in a fiduciary or quasi-fiduciary capacity, and owed plaintiffs a duty[.]"

The Court previously dismissed Plaintiffs' negligence claim "because the allegations fail to show a legal duty on the part of Defendant." The Court denied Plaintiffs further leave to amend their negligence claim. Despite the Court's clear statement that "Plaintiffs are not permitted to file an amended negligence claim[,]" Plaintiffs included an amended negligence claim in their Amended Complaint. "Filing an amendment to a complaint without seeking leave of court or written consent of the parties is a nullity[.]" *See Friedman v. Vill. of Skokie*, 763 F.2d 236, 239 (7th Cir. 1985), *cited with approval in Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989). Therefore, Defendant's motion to dismiss Count III is hereby **GRANTED** and Count III is hereby **DISMISSED**.

The Court notes that Plaintiffs did not file a motion to reconsider the scope of leave to amend nor did Plaintiffs file a motion for leave to amend prior to filing their amended negligence claim; instead, Plaintiffs merely filed an amended negligence claim in their Amended Complaint and later stated in opposition to Defendant's motion to dismiss that:

> While the court did not grant direct leave to amend the claim of negligence on the facts plead in the initial petition, plaintiffs here seek reconsideration of leave to amend based on the allegation of a "special relationship" created by defendant Bank when it undertook, and made an affirmative promise, to plaintiff Avery Hutcheson to accept, hold and in due course credit cash funds entrusted to its employee. . . . Plaintiffs request the court grant leave to amend in accord with

9

the principle that leave ought to be freely given; and, in the alternative should leave to amend on the basis presented be denied, plaintiffs request the court rule *sua sponte* on the merits of the proposed amendment for the record on appeal.

Pl.'s Sugg. Opp. Mot. Dismiss Am. Compl. 9-10. Even assuming Plaintiffs had properly filed a motion for reconsideration, Plaintiffs fail to establish the appropriateness of reconsideration under Rule 54(b).[10] Plaintiffs cite only one reason the Court should reconsider the scope of Plaintiffs' leave to amend – that Plaintiffs now allege a "special relationship" between Plaintiffs and Defendant such that Defendant owed a duty to Plaintiffs. Plaintiffs' argument merely presents a new legal theory/argument for Defendant's alleged duty, which could have been, but was not, raised at the time Defendant's first motion to dismiss was pending.[11] At that time, Plaintiffs could have argued that Defendant owed Plaintiffs a duty based on a "special relationship" but, instead, Plaintiffs argued only that Defendant owed duties to Plaintiffs as an agent in escrow. Accordingly, to the extent Plaintiffs request reconsideration of the Court's prior order limiting the scope of Plaintiffs' leave to amend, the Court hereby denies such a request.[12]

---

[10] *See generally Julianello v. K-V Pharm. Co.*, 791 F.3d 915, 922-23 (8th Cir. 2015) ("when considering a motion for reconsideration, the inquiry is more narrow [than under Rule 15]"); *Jones v. Casey's Gen. Stores*, 551 F. Supp. 2d 848, 854-55 (S.D. Iowa 2008) ("It is generally held that a court may amend or reconsider any ruling under Rule 54(b) to correct any " 'clearly' or 'manifestly' erroneous findings of facts or conclusions of law.").

[11] *Julianello v. K-V Pharm. Co.,* 791 F.3d 915, 923 (8th Cir. 2015) ("A motion for reconsideration is not a vehicle to identify facts or legal arguments that could have been, but were not, raised at the time the relevant motion was pending."); *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988) (quoting *Rothwell Cotton Co. v. Rosenthal & Co*., 827 F.2d 246, 251 (7th Cir.), *as amended*, 835 F.2d 710 (7th Cir.1987)) ("Nor should a motion for reconsideration serve as the occasion to tender new legal theories for the first time").

[12] The Court notes that Plaintiffs had ample opportunity to raise the argument that a duty exists by reason of a "special relationship." Plaintiffs' original complaint merely stated that Defendants owed Plaintiffs a duty. Defendants argued in their original suggestions in support of dismissal that the parties' relationship is that of a lender and borrower, which is contractual and does not create a duty in tort. Plaintiffs were granted a two-week extension of time to respond to Defendant's motion to dismiss and then, when they did file suggestions in opposition, Plaintiffs addressed Defendant's argument with a brief response that argued Defendant had a duty, not as a lender, but as an agent in escrow. After Defendant filed reply suggestions arguing Defendant was not acting as an escrow agent under to Missouri law, Plaintiffs filed a motion for leave to file an amended complaint. Plaintiffs' proposed amended complaint stood on the argument that Defendant owed Plaintiffs a duty as an agent in escrow. The Court rejected Plaintiffs' argument and dismissed Plaintiffs' negligence count because "the relationship between a borrower and lender is that of a debtor and creditor and typically does not constitute a fiduciary relationship." The Court further denied Plaintiffs' request for leave to amend because Plaintiffs' proposed amended

## IV.  DECISION

Based on the foregoing, the Court hereby **GRANTS IN PART AND DENIES IN PART** Defendant's motion to dismiss (Doc. 37).  Defendant's motion is **DENIED** insofar as it seeks to dismiss Counts I and II of Plaintiffs' Amended Complaint; the Court finds Plaintiffs state viable claims under Title III of the ADA but only for injunctive/preventative relief and attorney fees.  Defendant's motion is **GRANTED** insofar as it seeks to dismiss Count III of Plaintiffs' Amended Complaint.

**IT IS SO ORDERED**.

Dated: August 28, 2015  */s/ Douglas Harpool*
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**

---

complaint did not cure the defects cited by the Court regarding Plaintiffs' negligence claim and because Plaintiff presented no other argument for why Defendant owed Plaintiffs a duty in tort under Missouri law.  Plaintiffs then, rather than filing a motion to reconsider the scope of leave to amend or filing a subsequent motion for leave to amend and attaching a proposed amendment, merely filed their amended negligence claim.  In their argument in support of Defendant's new alleged duty – i.e. a "special relationship" – Plaintiffs cite no case applying that duty to a relationship between a lender/borrower and present no argument explaining why such application is appropriate.  The Court's independent research into the "special relationship exception" under Missouri law does not support the conclusion that the Court's denial of further leave to amend amounted to clear or manifest error.